### IN THE UNITED STATES DISTRICT COURT FOR THE
### NORTHERN DISTRICT OF ALABAMA
### MIDDLE DIVISION

| | |
|---|---|
| **DONNA L. FITTS**, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **CIVIL ACTION NO.** |
| ) | **4:11-CV-02869-KOB** |
| ) | |
| **MICHAEL J. ASTRUE**, ) | |
| **Commissioner of the Social**, ) | |
| **Security Administration** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

### I. Introduction

On March 12, 2008, the claimant, Donna Fitts, applied for disability insurance benefits under Title II of the Social Security Act. The claimant alleges disability commencing on May 25, 2007. On June 27, 2008, the Commissioner denied the application. The claimant timely requested a hearing before an Administrative Law Judge, and the ALJ held a video hearing on February 7, 2011. In a decision dated February 22, 2011, the ALJ found that the claimant was not disabled as defined by the Social Security Act, and, thus, was ineligible for disability insurance benefits. On June 14, 2011, the Appeals Council denied the claimant's request for review; consequently, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration. (R.1). The claimant has exhausted her administrative remedies, and this court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.  Issues Presented

The claimant presents the following issues for review: 1) whether the ALJ properly discredited the treating physician's opinion; 2) whether the ALJ properly applied the Eleventh Circuit's three-part pain standard when discrediting the claimant's subjective testimony concerning the severity of her symptoms.

## III.  Standard of Review

The standard of review of the Commissioner's decision is a limited one.  This court must affirm the Commissioner's decision if he applied the correct legal standard and if substantial evidence supports his factual conclusions.  42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Richardson v. Perales*, 401 U.S. 389, 401 (1971).  A reviewing court may not look only to those parts of the record that support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ.  *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).  "[The Court must]. . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's]. . . factual findings. . . No similar presumption of validity attaches to the [Commissioner's]. . . legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker v. Bowen,* 826 F.2d 996, 999 (11th Cir. 1987).

## IV.  Legal Standard

Under 42 U.S.C. § 423(d)(1)(A), "a person is entitled to disability benefits when the person is unable to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which has lasted or can last for a continous period of not less than 12 months. . . "

To make this determination the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[1]

The ALJ must give the treating physician's testimony substantial or considerable weight, unless "good cause" is provided. *Crawford v. Commissioner,* 363 F.3d 1155, 1159 (11th Cir. 2004); *see also Lewis v. Callahan*, 125 F.3 1436, 1440 (11th Cir. 1997). "'Good cause' exists when the: 1) treating physician's opinion is not bolstered by the evidence; 2) evidence supported a contrary finding; or 3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004).

To establish disability through subjective testimony, the claimant must satisfy the three-part "pain standard." The pain standard requires "1) evidence of an underlying medical condition and 2) either (a) that objective medical evidence confirms the severity of the alleged pain, or (b)

---

[1] *McDaniel v. Bowen,* 800 F.2d 1026 (11th Cir. 1986) was a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See, e.g., Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

that the objectively determined medical condition could reasonably cause the alleged pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). "A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support the finding of a disability." *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995).

## V. Facts

The claimant was thirty-seven years old at the time of the hearing and had at least a high school education. (R. 27). She previously worked as a nursing assistant and as a medical assistant for a doctor's office. (R. 38). According to claimant, she suffered from the residual effects of a right wrist fracture, chronic back pain, bipolar disorder, generalized anxiety disorder, post-traumatic stress disorder, and a history of substance abuse that caused her to stop working on May 25, 2007. (R. 20).

*Physical Impairments*

The claimant asserts that a wrist injury prevents her from working. In October 2006, the claimant sought treatment from Dr. William Haller at Gadsden Orthopedic Associates for a wrist and small finger fracture. Dr. Haller's clinical notes indicate that the fractures healed and aligned well; however, the claimant maintains that she still has residual pain from her injuries that interferes with her ability to work. (R. 280-81).

The claimant states that she suffers from chronic back pain. The claimant began having chronic back pain after a work-related injury that occurred in early 2008. The claimant's primary physician, Dr. Wilborn, referred her to Gadsden Regional Medical Center for an MRI on February 9, 2009. However, the MRI did not show any abnormalities of the claimant's spine or evidence of herniation, spinal stenosis, or any other condition that may constitute a listed

impairment. (R. 339-47).

*Mental Impairments*

The claimant suffers from anxiety disorder, bipolar disorder, depression, post-traumatic stress disorder, and a history of substance abuse.  In April 2004, Dr. John R. Wilborn, an internist with Internists Associates of Gadsden, P.A., treated the claimant after she began experiencing insomnia, heightened stress, agitation, and crying spells.  Dr. Wilborn diagnosed the claimant with anxiety disorder and prescribed the following medications:  Zoloft, Klonopin, Adixpex, and Valium.  The claimant's symptoms became progressively worse over the year.  (R. 307-09).  On January 3, 2005, Dr. Wilborn again treated the claimant for increased irritability, depression, and insomnia.  During the visit, the claimant admitted to having some suicidal thoughts. (R. 302).

The claimant's mental conditions apparently became worse in January 2008.  A friend of the claimant transported her to Gadsden Regional Medical Center's emergency room on January 19, 2008.  The attending physician, Dr. Farrukh Jamil, admitted the claimant to the psychiatric ward, where she stayed until January 23, 2008.  During her stay, the claimant complained of increasingly severe depression, crying spells, and frequent thoughts of suicide.  The claimant further reported sleeplessness, mild anxiety, manic behavior, and increased stress from family issues.  The claimant admitted that she suffered from depression since the age of 12 to 13, mostly caused by an abusive relationship with her father, and that her depression has increased since her mother's death in 2006.  Although the patient denied alcohol abuse, a urinalysis tested positive for marijuana and benzodiazepines. Dr. Jamil diagnosed the claimant with bipolar affective disorder, benzodiazepine and marijuana abuse, and generalized anxiety disorder.  (R. 265-68).

On February 22, 2008, the claimant again sought treatment at Gadsden Regional Medical

Center's emergency room, requesting adjustments to her medications because of allergic reactions and increasing depression. Dr. Jamil treated the claimant during the visit. The claimant reported increased depression and multiple stressors from financial and family problems, but denied any suicidal thoughts. Dr. Jamil admitted the claimant to the psychiatric ward for further evaluation. Dr. Jamil's diagnosis mirrored his diagnosis from the previous month, but he adjusted the claimant's medications and ordered a followup exam at Eastside Medical Center on Febrary 26, 2008. (R. 269-76). No record of the followup visit in February exists in the record.

At the Disability Determination Services's request, Dr. Jack L. Bentley, performed a consultative psychological examination of the claimant on June 2, 2008. Dr. Bentley noted that the claimant suffers from mood swings, anxiety, and brief episodes of suicidal thoughts. However, the claimant stated that her medications had improved her symptoms and coping skills since her hospital stays earlier in the year. The claimant did mention having frequent sleep disruptions because of post-traumatic stress disorder flashbacks. Dr. Bentley stated in his assessment that the claimant did not appear anxious or in distress. The claimant performed reasonably well on various exercises. The claimant made two of four miscalculations when counting backwards from 100 by seven, but performed well in a similar exercise when counting by three. The claimant performed reasonably well on memory and general knowledge exercises. Dr. Bentley estimated that the claimant has cognitive skills of the low average range, but is able to socialize with friends, perform housework, and to manage funds. (R. 311-14).

On June 25, 2008, Dr. Samuel J. Popkin, a psychologist and the Alabama DDS's medical examiner, conducted the claimant's Psychiatric Review Technique (PRT) exam and mental

residual functional capacity test. Dr. Popkin found the claimant suffered from anxiety-related disorders, substance abuse, bipolar syndrome, and post-traumatic stress disorder. (R. 315-20). Dr. Popkin concluded that the claimant has the ability to understand, remember, and carry out simple instructions, but has difficulty with complex instructions; has the ability to sustain attention and concentration for two hour periods; has the ability to manage casual, informal contact with the public, coworkers, and supervisors; has the ability to accept and utilize supervision and to respond to appropriate feedback and instructions; and has the ability to respond to simple and infrequent changes in her work routine. (R. 331).

The claimant began and continued treatment with therapists, Michele Fouts and Joyce Luman, and Dr. Romain Hain at Eastside Mental Health Center throughout 2009 and 2010. Although the claimant reported financial and family stressors, notes from her therapy sessions indicate that her medications and therapy had improved her mood and mental conditions. Records indicated that throughout the two-year period the claimant's mental conditions and stability gradually improved overall. (R. 360-73).

Lastly, on January 5, 2011, Dr. Wilborn, her internist, provided an opinion stating that the claimant is unable to work because of mental and physical impairments. Dr. Wilborn cited the claimant's bipolar, post-traumatic stress, and manic-depressive disorders, and the claimant's chronic back pain as reasons for her inability to work. (R. 381).

*ALJ Hearing*

The Commissioner denied the claimant's application for disability benefits on June 27, 2008. The claimant filed a request for an administrative hearing, and the ALJ held a video hearing on February 7, 2011. The claimant testified to having worked primarily in nursing

homes for the past 13-14 years. She stated that she last worked in mid-2007, when she lost her job because of a dispute with a supervisor. (R. 40).

The claimant then testified to her daily activities and family life. The claimant explained that she is responsible for her elderly father's care and does not receive much family support to help care for him. Furthermore, the claimant has two children and provides care for both. The claimant asserted that she is responsible for getting her father to the hospital and sometimes has to transport her daughter to school activities. However, the claimant maintained she mostly stays isolated, does not leave the house, and mostly watches television during the day. A friend of the claimant performs any shopping that the claimant needs during the week. (R. 41-46).

Next, the claimant spoke about her impairments. The ALJ asked the claimant about her wrist injury. The claimant replied that she had some movement limitations because of the fracture, but could write and use a computer if necessary. The claimant stated that she initially stopped working because of emotional instability and crying spells occurring after the death of her mother. The claimant further contended that she experiences anxiety and panic attacks if she is around people or while driving. Furthermore, the claimant stated that she often has trouble sleeping, has nightmares, and experiences hyperactivity where she will not sleep for days at a time. The claimant testified that she does not exercise, but tries to do some household chores. However, the claimant stated that the movement required to do housework causes pain in her back. (R. 44-50).

The claimant's attorney further questioned the claimant about her daily routine and impairments. The claimant asserted that the children do most of the housework; that a friend does most of her shopping; and that she mostly sits at home watching television. The claimant

does have friends that visit two to three times per week, but she does not leave the house to socialize or attend her children's activities. The claimant maintained that exposure to the general public causes panic attacks and that she sometimes has panic attacks when alone in the home. The claimant further testified that she often has to lie down because of back pain and that her medications have caused constipation resulting in hemorrhoidal pain. (R. 52-56). The claimant had no other witnesses testify on her behalf.

  A vocational expert testified to provide evidence of jobs in the national economy that the claimant could perform. The ALJ asked the vocational expert whether a person limited to light exertional work that required no repetitive movement, but frequent manipulative work without the dominant hand, could perform the claimant's past relevant work. The vocational expert stated that the claimant could work as a medical assistant, but could not work as a nursing assistant because it requires significant movement of the dominant hand. (R. 58-59).

  The ALJ posed a second hypothetical that included limitations of no contact with the public and only superficial contact with supervisors and coworkers to account for the claimant's panic attacks, along with those limitations posed in the first hypothetical. The vocational expert maintained that claimant's past relevant work could not be performed, but did find jobs existing in the national economy that the claimant could perform. The vocational expert listed addressing clerk, ticket printer, and cotton roll packer as jobs existing in the national economy that the person could perform. The ALJ directly asked the claimant whether she thought she could perform an addressing clerk's duties. The claimant responded that she was unsure because of her memory and inability to concentrate. (R. 61).

  The ALJ posed a third hypothetical to the vocational expert that included the previous

limitations and the following additional limitations: simple, unskilled work that required concentration for only 15 minute periods; additional breaks because of panic attacks or crying spells; and absence from work more than two days per month. The vocational expert stated that no jobs exist in the national economy for a person with those limitations. (R. 62-64).

*ALJ's Decision*

On February 22, 2011, the ALJ issued a decision finding that the claimant was not disabled under the Social Security Act. The ALJ first found that the claimant met the Social Security Act's insured status requirements. Secondly, he found that the claimant had not engaged in substantial gainful activity since May 25, 2007. The ALJ further concluded that the claimant had the following severe impairments: residual effects of a right wrist fracture, bipolar disorder, generalized anxiety disorder, and post-traumatic stress disorder. The ALJ determined that none of the impairments, either singly or in combination, met or medically equaled those in the listed impairments.

The ALJ determined that the claimant's wrist impairment did not meet the requirements of a listed medical condition. To meet the requirement, the claimant's wrist impairment would have had to significantly impair her ability to reach, push, pull, grasp, and finger. However, the ALJ cited the claimant's ability to use a computer, her writing capability, and her ability to do laundry as proof that the wrist impairment does not significantly affect the claimant's daily activities. (R. 21).

The ALJ found that the claimant's mental impairments did not meet the listing requirements because of lack of severity. The ALJ noted that, to satisfy the "paragraph B" criteria for the listing, mental impairments "must result in at least two of the following: marked

[more than moderate but less than extreme] restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration." (R. 21).  The ALJ determined that the claimant only has mild restrictions to her daily life activities, citing the claimant's ability to do the following as grounds for his determination:  perform personal care; perform household duties with her children's assistance; perform child care responsibilities; and socialize with friends.  The ALJ stated that the claimant only had mild difficulties with concentration, noting the claimant's ability to correctly perform serial three subtractions, however the ALJ did note the claimant's mistakes when performing serial seven subtractions that indicated some concentration limitations.  The ALJ determined that the claimant does have moderate social functioning restrictions that cause the claimant to become anxious when with large groups of people and included the limitation in his RFC assessment.  The ALJ found no evidence that the claimant had any episodes of decompensation for an extended duration.  (R. 21-22).

      The ALJ determined that the claimant has the residual functional capacity to perform light work that requires no repetitive or manipulative work with the right dominant hand; requires no public contact; and requires no more than superficial contact with supervisors and coworkers.  The ALJ considered both the claimant's subjective testimony and objective medical evidence to make his determination.  The ALJ gave significant weight to the opinion of Dr. Popkin, the DDS's medical examiner, because of his expertise with the Social Security disability program and because his findings were largely consistent with the Eastside Mental Health Center's treament notes.  Dr. Popkin found that the claimant had the ability to perform simple,

unskilled labor. (R. 24-25).

The ALJ gave little weight to the opinion of the claimant's treating medical physician. The ALJ stated that because the claimant had been Dr. Wilborn's employee, the previous relationship may have influenced his medical opinion. The ALJ further noted that Dr. Wilborn does not specialize in treating mental impairments and that his opinion did not list functional limitations but made a conclusory determination of the claimant's disability status. Furthermore, the ALJ determined that the medical evidence from Eastside Mental Health Center and the opinions of Drs. Bentley and Popkin differed significantly from Dr. Wilborn's opinion. (R. 26).

Lastly, the ALJ discredited the claimant's subjective testimony. The ALJ cited the claimant's daily living routines demonstrating her ability to do household chores; her ability to perform child care duties; her ability to socialize with friends; and her ability to go shopping with family members as reasons to discredit the claimant's testimony. Moreover, the ALJ noted that the claimant's recent medical records indicated that the claimant's mental health had steadily improved. (R. 25-26).

### VI.  Discussion

**I.     Whether the ALJ properly discredited the treating physician's opinion.**

The claimant asserts that the ALJ did not provide good cause and failed to articulate his reasons for discrediting Dr. Wilborn's opinion. According to the claimant, the reasons the ALJ gave for discrediting Dr. Wilborn's opinion were not supported by substantial evidence. The claimant contends that the ALJ based his decision to discredit Dr. Wilborn on the claimant's pre-existing relationship with Dr. Wilborn. This court finds that the ALJ provided good cause and articulated his reasons for giving little weight to Dr. Wilborn's opinion and substantial evidence

exists to support the ALJ's findings.

Good cause exists if the treating physician's opinion is conclusory or inconsistent with the doctor's own medical records. *Phillips*, 357 F.3d at 1240-41. The treating physician's report may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory. *Crawford*, 363 F.3d at 1159. No reversible error exists when the ALJ articulates specific reasons for failing to give the treating physician's opinion controlling weight, and substantial evidence supports those reasons. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005). The ALJ may reject any medical opinion if the evidence supports a different finding. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985).

The ALJ found that Dr. Wilborn's opinion did not state limitations that the claimant's impairments may cause, but instead *concluded* that the claimant is completely disabled. Because disability determinations are reserved for the Commissioner, 20 C.F.R. § 404.1527(d)(1), and Dr. Wilborn made a disability determination rather than state specific limitations that the claimant's impairments may cause, the ALJ did not have to accord significant weight to the Dr. Wilborn's opinion. *See Crawford*, 363 F.3d at 1159.

Additionally, the ALJ is allowed to consider the nature and extent of the treating relationship when according weight to the treating physician's opinion. 20 C.F.R. § 404.1527(c)(2)(ii). The ALJ may also consider the physician's specialization. 20 C.F.R. § 404.1527(c)(5). Here, the ALJ gave little weight to Dr. Wilborn's opinion because the doctor does not specialize in mental impairments. Moreover, the ALJ reasoned that the prior relationship between the claimant and Dr. Wilborn as her employer may have influenced the doctor's medical opinion.

However, the ALJ's decision indicates that he did not discredit Dr. Wilborn's opinion solely on the doctor's lack of specialization and his relationship to the claimant, but merely included those reasons as additional factors in discrediting Dr. Wilborn's opinion. Relying on Eastside Mental Health Clinic's medical records, which showed gradual improvement of the claimant's mental impairments, and those of Drs. Popkin and Bentley, which showed the claimant only has mild to moderate limitations, the ALJ determined that Dr. Wilborn's opinion substantially conflicted with the other medical evidence. Because the ALJ articulated his reasons and substantial evidence exists to support his decision, this court finds that the ALJ did not commit reversible error in discrediting Dr. Wilborn's opinion.

**II.     Whether the ALJ properly applied the Eleventh Circuit's three-part pain standard when discrediting the claimant's subjective testimony concerning the severity of her symptoms.**

The claimant asserts that the ALJ incorrectly applied the pain standard and did not provide sufficient credibility to her subjective testimony. The claimant maintains that the ALJ discredited her testimony despite evidence supporting her claims; that he failed to articulate his reasons for discrediting the testimony; and that he only cited parts of the record that supported his position. The ALJ determined that the claimant suffered from impairments that could reasonably be expected to cause her symptoms, but found that the claimant asserted greater severity than the medical evidence supported. This court finds that the ALJ properly applied the pain standard and specifically articulated his reasons for discrediting the claimant's subjective testimony; therefore, the ALJ committed no reversible error.

The pain standard applies if the claimant attempts to establish disability through her own

testimony of subjective symptoms. The pain standard requires evidence that the claimant has an underlying medical condition, *and either* objective medical evidence confirming the alleged symptoms, *or* that the objectively determined medical condition is severe enough to reasonably cause the alleged symptoms. *Wilson*, 284 F.3d at 1225. If the ALJ decides not to credit the claimant's pain testimony, he must discredit it explicitly and articulate explicit and adequate reasons for doing so. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).

      The ALJ relied on the claimant's own testimony of her daily activities to discredit the severity she alleges. The claimant testified that she often tries to do household chores, is responsible for the care of her elderly father and children, and often socializes with friends that come to visit. Based on the claimant's own testimony that she can adequately perform each of these functions, the ALJ determined that the claimant is not as limited as she claims.

      Moreover, despite the claimant's assertion that the ALJ only reviewed the medical evidence that supported his conclusions, the ALJ's decision indicates that he reviewed the entire record in discrediting the claimant's testimony. First, the ALJ reviewed all of the claimant's medical evidence presented from the treating physician's notes beginning in 2003 to the attorney-supplied evidence through 2011. Although the ALJ did discredit Dr. Wilborn's opinion, the ALJ relied heavily on psychiatric treatment notes from Dr. Romain Hain and therapists, Michele Fouts and Joyce Luman, at Eastside Mental Health Clinic to make his determinations. Those records from early 2009 to 2010 indicate that the claimant's medication regimens and therapy sessions had significantly improved the claimant's mental impairments. Although the claimant still has some emotional episodes resulting from financial and family issues, the ALJ found that the medical evidence suggests that medication and therapy have improved the claimant's

conditions enough to allow her to perform work, thus further discrediting the claimant's testimony.

Furthermore, the ALJ noted that the consultative exams and mental assessments conducted by Drs. Popkin and Bentley corroborated Eastside Mental Health Clinic's records showing that the claimant's mental impairments have improved. Dr. Popkin's mental assessment and Dr. Bentley's consultative examination indicated that the claimant's impairments are only mildly or moderately limiting and that the claimant is capable of performing light, unskilled labor, further contradicting the claimant's testimony concerning the severity of her symptoms. Because the ALJ explicitly and adequately expressed his reasons for discrediting the claimant's subjective testimony, the ALJ committed no reversible error and substantial evidence supports his decision.

## VII. Conclusion

For the above reasons, this court concludes that the decision of the Commissioner is supported by substantial evidence and is AFFIRMED. The court will enter a separate order to that effect simultaneously.

DONE and ORDERED this 20th day of September, 2012.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE